UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMY ELIZABETH GORE,

                        Plaintiff,

v.                                                            1:18-CV-1516
                                                                  (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>6000 North Bailey Ave, Ste. 1A<br>Amherst, NY 14226 | AMY CHAMBERS, ESQ.<br>KENNETH HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | ARIELLA ZOLTAN, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 17.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.    RELEVANT BACKGROUND**

A. **Factual Background**

Plaintiff was born in 1983. (T. 68.) She received a GED. (T. 170.) Generally, Plaintiff's alleged disability consists of fibromyalgia, carpal tunnel, depression, panic disorder, anxiety, cervical disc impairment, chronic pain disorder, spinal stenosis, and Factor V Leiden mutation. (T. 169.) Her alleged disability onset date is September 1, 2007. (T. 68.)

B. **Procedural History**

On February 24, 2015, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 68.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 11, 2017, Plaintiff appeared before the ALJ, Timothy McGuan. (T. 33-67.) On January 16, 2018, ALJ McGuan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-32.) On October 29, 2018, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

C. **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-28.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 24, 2015. (T. 17.) Second, the ALJ found Plaintiff had the severe impairments of: bipolar disorder, generalized anxiety disorder, attention deficit and hyperactivity disorder ("ADHD"), adjustment disorder with depression, fibromyalgia, cervicalgia, and obesity. (*Id.*) Third, the ALJ found Plaintiff

did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b); except Plaintiff could:

> occasionally interact with the general public and has no limitation with supervisors or coworkers.  [Plaintiff] can occasionally understand, remember and carry out complex but not detailed instructions and tasks (which is consistent with simple, unskilled work).

(T. 21.)[1]  Fifth, the ALJ determined Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 27-28.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff essentially argues the ALJ erred in assessing Plaintiff's subjective complaints. (Dkt. No. 12 at 17-21.)  Second, Plaintiff argues the ALJ erred in formulating an RFC determination absent a medical opinion. (*Id*. at 21-22.)  Third, and lastly, Plaintiff argues the ALJ failed to close evidentiary gaps and develop the record. (*Id*. at 22-27.)  Plaintiff also filed a reply in which she reiterated her original arguments. (Dkt. No. 16.)

### B.   Defendant's Arguments

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

In response, Defendant makes one argument.  Defendant argues substantial evidence supported the ALJ's decision that Plaintiff was not disabled.  (Dkt. No. 15 at 13-22.)

## III.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV.   ANALYSIS**

    **A.   Plaintiff's Subjective Complaints**

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms.  *See* 20 C.F.R. § 416.929[2].  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. § 416.929(a).  Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit plaintiff's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) plaintiff's daily activities; (2) the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication plaintiff takes or has taken to relieve her pain or other symptoms; (5) other treatment plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that plaintiff takes or has taken to relieve her pain or other symptoms; and (7) any other factors concerning plaintiff's functional limitations and restrictions due to her pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii).

The ALJ is not obligated to credit a plaintiff's testimony about her limitations and symptoms, but has discretion to evaluate plaintiff's subjective complaints in light of the

---

[2]   Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

6

evidence in the record.  See Genier v. Astrue, 606 F.3d 46, 50 (2d Cir. 2010).  Here, the ALJ determined Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 22.)

Plaintiff makes multiple arguments asserting the ALJ failed to properly assess Plaintiff's subjective complaints.  First, Plaintiff argues the ALJ improperly faulted her for not complying with treatment and the ALJ failed to satisfy the requirements set forth in SSR 82-59.  (Dkt. No. 12 at 17.)[3]  Plaintiff's argument is misplaced.

SSR 82-59, which explains the application of 20 C.F.R. § 416.930, provides that the "SSA may make a determination that an individual has failed to follow prescribed treatment *only* where" certain conditions are met.  SSR 82-59, 1982 WL 31384, *1 (Jan. 1, 1982) (emphasis added).  The first requirement is that the evidence must "establish[ ] that the individual's impairment precludes engaging in any substantial gainful activity (SGA)."  Id.  "Where SSA makes a determination of 'failure,' a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable."  Id.  Thus, "SSR 82-59 normally applies to a claimant's eligibility for benefits *after a finding of disability has been made*."  Grubb v. Apfel, 2003 WL 23009266, *5 (S.D.N.Y. Dec. 22, 2003) (emphasis added).

Here, SSR 82-59 is not applicable.  The ALJ did not determine Plaintiff would be not disabled but for her failure to follow prescribed treatment.  See Price v. Colvin, No. 1:14-CV-00756, 2017 WL 2572311, at *4 (W.D.N.Y. June 14, 2017) (SSR 82-59 did not

---

[3] SSR 82-59 has since been rescinded and replaced by SSR 18-3p effective October 29, 2018.

7

apply where the ALJ did not find that plaintiff had a disabling impairment based on substantial evidence in the record); *see Lockett o/b/o T.J.L. v. Comm'r of Soc. Sec.,* No. 17-CV-1333, 2019 WL 2117653, at *3 (W.D.N.Y. May 15, 2019).  Therefore, SSR 82-59 does not apply here.

The Administration issued guidance specifically addressing a plaintiff's frequency of treatment in the context of assessing plaintiff's subjective complaints.  SSR 96-7p states a plaintiff's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."  SSR 96-7p, 1996 WL 374186, at *7.[4]  The SSR cautions that ALJs "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  *Id*.

In evaluating Plaintiff's subjective complaints, the ALJ properly considered her non-compliance with treatment.  (T. 23.)  The ALJ outlined evidence in the record of missed appointments, termination from treatment, and failure to follow treatment recommendations.  (*Id*.)  The ALJ properly considered alternative explanations for

---

[4] SSR 16-3p, which replaced SSR 96-7p, contains similar language:

if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individuals' symptoms are inconsistent with the overall evidence of record.  We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

Plaintiff's failure to comply with treatment.  *Lesanti v. Comm'r of Soc. Sec.*, No. 1:19-CV-0121, 2020 WL 500986, at *8 (W.D.N.Y. Jan. 30, 2020).  Where the record contained Plaintiff's reasoning for failure to follow treatment, the ALJ noted such reasoning.  (T. 23.)  In addition, the ALJ considered non-compliance as a "possible unwillingness to do what is necessary to improve her condition," as indication Plaintiff's "symptoms are not as severe as alleged," and if financial hardship was a factor Plaintiff failed to seek a "no-cost treatment alternative."  (*Id.*)  Therefore, the ALJ properly considered Plaintiff's failure to comply with treatment as one factor in his overall analysis of Plaintiff's subjective complaints.  *See Turner v. Berryhill*, No. 1:16-CV-0405, 2017 WL 4285902, at *3 (W.D.N.Y. Sept. 27, 2017) (ALJ properly considered the plaintiff's history of non-compliance with her prescribed treatment); *see Nicholson v. Colvin*, No. 6:13-CV-1296, 2015 WL 1643272, at *7 (N.D.N.Y. April 13, 2015) (ALJ properly considered the plaintiff's failure to comply with medical treatment as a factor weighing against her credibility).

Next, Plaintiff argues the ALJ erred in evaluating her subjective complaints because the ALJ "failed to show how Plaintiff was engaged in activities on a sustained basis that were comparable to full-time competitive work." (Dkt. No. 12 at 20-21.) Plaintiff's argument is misplaced.  The Regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a plaintiff's symptoms.  20 C.F.R. § 416.929(c)(3)(i).  Here, the ALJ concluded Plaintiff's activities of daily living were "not entirely consistent with [Plaintiff's] allegation of disabling physical and mental symptoms and limitations." (T. 23.)  The ALJ cited evidence in the record indicating Plaintiff could care for herself and her daughter, was

9

able to use a computer, could handle her finances, perform household chores, and go out without accompaniment.  (*Id*.)  Therefore, contrary to Plaintiff's assertion, the ALJ did not find Plaintiff's activities demonstrated her ability to perform work on a full-time sustained basis, rather, the ALJ properly determined Plaintiff's activities were inconsistent with her allegation of disabling symptoms.  *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (citing *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014)).  Therefore, the ALJ properly considered Plaintiff's activities as one factor in his overall evaluation of Plaintiff's subjective complaints.

Overall, the ALJ properly assessed Plaintiff's subjective complaints.  The ALJ considered Plaintiff's reported activities, inconsistencies in the record, non-compliance with treatment, and objective medical evidence.  (T. 22-23); *see Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (the ALJ is required to take plaintiff's reports of pain and other limitations into account, but is not required to accept plaintiff's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record).  All of the factors considered by the ALJ are expressly outlined in the Regulations as factors to consider in assessing a plaintiff's subjective complaints.  *See* 20 C.F.R. § 416.929(c).  Therefore, the ALJ did not err in his assessment of Plaintiff's subjective complaints.

**B.     RFC Determination**

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations."  20 C.F.R. § 416.945(a)(1).  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any

10

statement about what Plaintiff can still do, provided by any medical sources. *Id*. §§ 416.927(d), 416.945(a)(3), 416.946(c). Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity. *Id*. §§ 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

First, Plaintiff argues the ALJ's RFC was the product of legal error because the ALJ "failed to rely on any useful medical opinion related to Plaintiff's mental and physical limitations." (Dkt. No. 12 at 21.) Second, Plaintiff asserts because the ALJ failed to rely on a medical opinion in formulating his RFC determination, the RFC was improperly "based entirely on the ALJ's lay opinion and interpretation of complex bare medical records." (*Id*. at 22-24.) Lastly, Plaintiff asserts the ALJ failed to fully develop the record. (*Id*. at 24-27.)

Contrary to Plaintiff's assertion, an ALJ's RFC determination is not fatally flawed merely because it was formulated absent a medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); *see Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Therefore, Plaintiff's assertion that the ALJ's

11

RFC determination was the product of legal error because it was not supported by a specific medical opinion is without merit.

Remand may be appropriate, however, where an ALJ fails to assess Plaintiff's "capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Plaintiff asserts, without citation to the record, the ALJ failed to account for any stress limitations in the RFC. (Dkt. No. 12 at 21.) Plaintiff also asserts, with citation to the entire 726-page record, the ALJ failed to account for Plaintiff's episodic symptoms related to her mental health conditions. (*Id*.). The court is not required to "comb the record" in search of evidence in support of Plaintiff's position. *Johnson v. Colvin*, No. 13-CV-6319, 2014 WL 1394365, at *6 (W.D.N.Y. Apr. 9, 2014).

The ALJ is obligated to formulate Plaintiff's RFC based on the record as a whole, not just upon the medical opinions alone. *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018). The ALJ did just that in this case. After considering the record as a whole, the ALJ appropriately accounted for the physical and mental limitations he found supported by the overall record. In formulating a physical RFC, the ALJ considered evidence concerning Plaintiff's obesity, fibromyalgia, and spinal impairments. (T. 23-24.) The ALJ noted that despite obesity she exhibited "grossly normal clinical findings upon examination." (T. 23, 280, 388, 400, 628.) Regarding Plaintiff's fibromyalgia and cervicalgia, the ALJ noted Plaintiff received primarily conservative treatment and reported her pain was manageable with medication. (T. 23-24, 271, 388.) The ALJ noted examinations in which Plaintiff exhibited grossly normal

clinical findings, intact gait, normal sensation and strength, and full range of motion. (T. 24, 491, 295, 331, 389, 405, 554-555, 566.) The ALJ acknowledged objective medical imaging, such as MRIs and noted that the record contained no updated imagining since 2007. (T. 24.)

The ALJ also appropriately considered the evidence in the record concerning Plaintiff's mental impairments. The ALJ noted Plaintiff received primarily "limited, routine, and conservative treatment" for her mental impairments. (T. 24.) The ALJ outlined treatment notations to support his conclusion Plaintiff could occasionally interact with the general public and retained the ability to perform simple, unskilled work. (T. 25.)

The ALJ considered the opinion provided by the non-examining State agency medical consultant, H. Tzetzo, Ph.D. (T. 25.) Dr. Tzetzo opined there was insufficient evidence in Plaintiff's record to make a disability determination because Plaintiff failed to attend two consultative examinations. (T. 25, 74-75.) The ALJ afforded Dr. Tzetzo's statement only "little weight" reasoning the doctor did not have the benefit of reviewing the entire record. (T. 25.) The ALJ also assessed various statements in the record by treating providers asserting Plaintiff had various degrees of disability. (*Id*.) The ALJ afforded the statements "little weight," reasoning they were rendered by other medical sources, went to an issue reserved to the Commissioner, were intended to be temporary, and were remote to Plaintiff's claim. (T. 25-26); *see* 20 C.F.R. § 416.927(d) (the ultimate finding of whether plaintiff is disabled and cannot work is reserved to the Commissioner); *see id*. § 416.927(f) (the opinions of "other medical sources" may be

considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight).

The RFC finding is not defective merely because it "does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Trepanier*, 752 F. App'x at 79; *see also Monroe,* 676 F. App'x 5, 8 (2d Cir. 2017) (rejecting argument that remand was required because ALJ discounted the only medical opinion such that "there was no competent medical opinion that supported the ALJ's RFC determination."). Although the ALJ did not adopt any medical opinion in its entirety, he did not rely on his own lay interpretation of the medical record in formulating an RFC. The ALJ here relied on the record as a whole. Accordingly, the Court finds that the ALJ did not substitute his own lay judgment for a competent medical opinion. *Wynn*, 342 F. Supp. 3d at 349 (W.D.N.Y. 2018).

In addition, the ALJ was not required to further develop the record. It is well-established Second Circuit law that "the ALJ, unlike a judge in a trial, must himself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (internal quotation and citations omitted). The ALJ must fulfill this duty "even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

To discharge the duty, the ALJ will develop a complete medical history "for at least the 12 months preceding the month in which [Plaintiff] file[s] [his] application." 20 C.F.R. § 416.912(d). An ALJ will "make every reasonable effort to help [the plaintiff] get medical reports from [her] own medical sources." *Id*. Every reasonable effort is defined in the regulations as "an initial request for evidence from [the] medical source and, at

14

any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make one followup request to obtain the medical evidence necessary to make a determination." *Id*. § 416.912(d)(1).

Although the ALJ has a duty to develop the record, ultimately it is Plaintiff's burden to "prove to [the Social Security Administration] that [she is] blind or disabled." 20 C.F.R. § 416.912(a).  In adhering to this responsibility, Plaintiff must "inform [the Administration] about or submit all evidence known to [him] that relates to whether or not [he is] blind or disabled." *Id.*  Furthermore, if there are no "obvious gaps" in the administrative record, the ALJ "is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (ALJ under no obligation to seek additional information from treating source where there were no gaps or deficiencies in the voluminous record).

With this context in mind, two issues arise when the duty to develop the record is challenged: (1) whether there was an "obvious gap" in the record that should have prompted the ALJ to seek additional information, *Rosa*, 168 F.3d at 79 n. 5; and (2) whether the ALJ fulfilled his duty by making "every reasonable effort" to fill that gap under 20 C.F.R. § 416.912(d)(1). *Blackman v. Berryhill*, No. 1:16-CV-0869, 2018 WL 3372963, at *3 (W.D.N.Y. July 11, 2018).

Plaintiff asserts the ALJ failed to "close evidentiary gaps as his mental RFC is based entirely on lay opinion, missing evidence, and non-examining [State agency medical consultant]."  (Dkt. No. 12 at 25.)  Plaintiff's argument fails.

First, Plaintiff filed her application in 2015 (T. 68) and the ALJ developed Plaintiff's record for "at least the 12 months preceding the month" in which she filed her application. 20 C.F.R. § 416.912. The record contained treatment records from 2006 (T. 423) through 2017 (T. 685). The ALJ requested records from the sources provided to the Administration and further, Plaintiff was represented by counsel who submitted numerous records.

Second, the ALJ made "every reasonable effort to help [Plaintiff] get medical evidence from [her] medical sources and entities." 20 C.F.R. § 416.912. Plaintiff's counsel informed the ALJ on September 28, 2017, he was seeking additional medical evidence. (T. 249-250.) The ALJ held the record open for three months after the hearing to allow Plaintiff, through counsel, to obtain additional treatment records including a medical source statement. (T. 35-36.) Plaintiff did not submit additional records after the hearing. Plaintiff did not submit additional records to the AC or this Court. Therefore, "it can be presumed that [Plaintiff] felt the records were complete." *Babcock v. Comm'r of Soc. Sec.*, No. 17-CV-6484, 2019 WL 1649347, at *6 (W.D.N.Y. Apr. 17, 2019); *Myers ex rel. C.N. v. Astrue*, 993 F. Supp. 2d 156, 163 (N.D.N.Y. 2012) ("Plaintiff cannot simply identify arguable gaps in the administrative record and claim that such gaps are a *per se* basis for remand [where as here] Plaintiff, through counsel, requested and received additional time to obtain the evidence in question and then failed to produce it without asking for more time or for issuance of a subpoena [and] Plaintiff's counsel submitted additional evidence following the hearing [ . . .] which could have led the ALJ reasonably to conclude that no further records were available or forthcoming."); *compare Calhoun v. Comm'r of Soc. Sec.*, No. 18-CV-6070, 2019 WL

1949743, at *4 (W.D.N.Y. May 2, 2019) (ALJ failed to develop record of *pro se* plaintiff where treatment records did not contain notations from plaintiff's surgery and had the ALJ "carefully reviewed the documents" he would have realized surgery notations were missing) *with Merritt v. Colvin*, 142 F. Supp. 3d 266, 271 (N.D.N.Y. 2015) (the ALJ "need not canvas every medical provider while the [plaintiff represented by counsel] offers little or no guidance as to whether the medical records are relevant"). Therefore, the ALJ properly developed the record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: April 14, 2020

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge